IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

| | |
|---|---|
| JAMES PLONSKER, | ) |
| | ) |
| Plaintiff, | ) |
| | ) Case No. 10-cv-1339-Orl-28GJK |
| vs. | ) |
| | ) |
| CONTACT CENTERS OF AMERICA, LLC, | ) |
| | ) **JURY TRIAL DEMANDED** |
| Defendant. | ) |

**FIRST AMENDED COMPLAINT**

The Plaintiff, James Plonsker, through his attorneys, hereby submits this First Amended Complaint against the Defendant, Contact Centers of America, Inc., and states as follows:

**COUNT I**
**(Breach of Contract)**

**Nature of the Action**

1. This is an action to recover wages in the form of unpaid commissions. The Plaintiff, James Plonsker, agreed to solicit clients for the Defendant's call center service business. In consideration for Plaintiff's sales activities, the Defendant agreed to pay Plaintiff commissions on the accounts he produced based on the gross revenues generated from the accounts over a three year period. Despite producing accounts that resulted in millions of dollars in gross revenues for the Defendant, Contact Centers of America, Inc. has failed and refused to pay the Plaintiff commissions owed and that will become due in the future in breach of its promise.

**Jurisdiction and Venue**

2. The Plaintiff, James Plonsker, is a citizen of the State of Illinois, residing in the Village of Highland Park.

3. The Defendant, Contact Centers of America, Inc. ("CCA") is a Michigan limited liability

1

company headquartered at 1800 Metro Center Blvd, Orlando, Florida.

4.     The managing member of CCA is Joseph Jacoboni, a citizen of Florida.

5.     On information and belief, none of the members of CCA are citizens of Illinois.

6.     This Court has diversity jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332 because the Plaintiff is a citizen of the State of Illinois and the Defendant and all of its members are citizens of states other than Illinois thereby establishing complete diversity of citizenship between the parties. Additionally, the amount in controversy exceeds $75,000.00, exclusive of interest and costs.

7.     Venue is proper in the Middle District of Florida, Orlando Division, because the Defendant is a resident of this district and part of the transaction upon which the cause of action is based occurred within this district.

## The Parties' Contractual Relationship

8.     The Defendant CCA is engaged in the business of providing contact center services (call centers) to a variety of businesses located throughout the United States.

9.     On June 9, 2009, CCA offered Plonsker a sales position as an independent contractor for CCA and Plonsker accepted the offer. A true and correct copy of the June 9, 2009 Letter Agreement entered into between the parties is attached hereto as Exhibit A.

10.    Pursuant to the terms of the parties' June 9, 2010 Letter Agreement, Plonsker assumed the title of Vice President of Sales, effective June 15, 2009. His duties were to produce new accounts for the Defendant's call center services.

11.    In consideration for Plonsker's performance of his sales responsibilities, CCA agreed to pay Plonsker $6,750.00 on a semi-monthly basis and Plonsker agreed to be responsible for his own federal and state income taxes as an independent contractor.

12.     In addition to the fixed monthly payments, CCA also agreed to pay Plonsker commissions based on the sales he produced for the company.  The commission rate specified in the June 9, 2009 Letter Agreement was:

  a.    3% of the first year's gross revenue of the accounts produced by Plonsker;

  b.    2% of the second year's gross revenue of the accounts produced by Plonsker; and

  c.    1% of the third year's gross revenue of the accounts produced by Plonsker.

13.     Plonsker was further informed by Jacoboni that if the account was renewed, he would be entitled to additional commission based on the same three year rate.

14.     Plonsker begin performing his sales duties for CCA on or about June 15, 2009.

### Plonsker's Sales Activities

15.     As an independent contractor, Plonsker worked from his home in Illinois and regularly traveled throughout the country making sales calls to prospective customers for CCA.

16.     Plaintiff also traveled to CCA's headquarters informing Joseph Jacoboni, CCA's Chief Executive Officer, of his sales progress and introduced Mr. Jacoboni to the numerous account leads and opportunities that Plaintiff was producing and developing for CCA.

17.     Additionally, Plonsker participated in numerous conference calls discussing CCA's services and arranged and attended site visits with prospective clients demonstrating how those services would be provided by CCA.

18.     During the period between June 9, 2009 and October 13, 2009, Plonsker introduced numerous new client opportunities to CCA as a direct result of his sales activities, including the following:

  a.    American Automobile Association
  b.    Affinity Group
  c.    AirTran
  d.    Apple

      e.     APS
      f.     BlueCross Blue Shield of Florida
      g.     Bluegreen
      h.     Boost Mobile
      i.     CIGNA
      j.     Discover Financial Services
      k.     Flaghouse
      l.     Florida Virtual School
      m.     Follett
      n.     Generac
      o.     Henry Schein
      p.     Herbalife
      q.     Hewlett-Packard
      r.     Humana
      s.     IBM
      t.     Infor Global Solutions
      u.     Intuit
      v.     Juniper Networks
      w.     KCI
      x.     Merrill Lynch
      y.     McAfee
      z.     OptionsXpress
      aa.     RCI
      bb.     Redcats USA
      cc.     Rockwell Automation
      dd.     RouteSmart Technologies
      ee.     Royal Caribbean Cruises
      ff.     Securian
      gg.     Shaklee
      hh.     UnitedHealth Group
      ii.     United Parcel Service
      jj.     WiSuite
      kk.     Xerox

19.    Of the foregoing account opportunities introduced by Plonsker to CCA, the Florida Virtual School actually signed a contract with CCA entitling Plonsker to over $160,000 in commission payments based on the account's projected gross revenues over a three year period.

20.    Similarly, Plaintiff is informed and believes that Rockwell Automation also entered into a contract with CCA as a result of the Plaintiff's extensive solicitation efforts. Plaintiff is informed and believes the Rockwell Automation account will generate a minimum of $175,000 in

commission payments to Plonsker based on projected gross revenues of the account over a three year period.

21.     On or about October 13, 2009, Defendant sought to renegotiate the Plonsker's contract, seeking to reduce his compensation significantly. The Plaintiff refused to renegotiate his compensation that was previously agreed to in the June 9, 2009 Letter Agreement. In response to Plaintiff's refusal to reduce his compensation, CCA terminated Plaintiff's services.

22.     Just days prior to his termination, Plonsker had obtained a verbal commitment from Intuit to move forward on a contract that would generate over $2,000,000.00 in commission payments to Plaintiff based on the account's projected gross revenues of over $30,000,000 during a three year period and CCA was aware of this commitment at the time of Plonsker's termination.

23.     Additionally, Plonsker had procured substantial relationships with Affinity Group, Airtran, Merrill Lynch, and Heralife among others, where CCA was simply waiting for the client to execute the contract with CCA.

24.     By procuring sales opportunities for CCA which produced substantial account revenues for CCA, Plonsker is contractually entitled to receive commissions under the terms of the June 9, 2009 Letter Agreement based on the rate of 3% of the first year's gross revenue; 2% of the second year's gross revenue; and 1% of the third year's gross revenue in addition to any renewal of the contract.

25.     CCA, however, ceased paying Plonsker his earned commission as of October 13, 2009 when it terminated the Agreement.

26.     Nothing in the June 9, 2009 Letter Agreement authorized CCA to discontinue paying Plonsker the sales commission on accounts he produced to CCA during the term of his Agreement. To the contrary, the June 9, 2009 Agreement specifically obligated CCA to pay

Plaintiff's commissions based on the gross revenue of the accounts produced by Plonsker up to three years.

27.     By failing to pay Plonsker the commissions due him under the terms of the June 9, 2009 Letter Agreement, CCA has breached its agreement with Plonsker.

28.     As a result of the Defendant's breach of its agreement, Plonsker has been damaged in an amount exceeding $350,000 based on the commissions he is entitled to receive for producing the Florida Virtual School and Rockwell Automation accounts, in addition to the commissions earned on the revenues generated from all of the other accounts Plaintiff produced for CCA.

29.     In addition to his actual damages, the Plaintiff is entitled to recover his costs and attorneys' fees incurred in connection with this action pursuant to Florida Statute 448.08 because unpaid commissions are "wages".

Wherefore, the Plaintiff requests that this Court enter judgment in his favor and against the Defendant, Contact Centers of America, LLC, and to award him the following relief:

   a.   Order the Defendant to account for all gross revenues received by CCA from accounts produced by Plaintiff;

   b.   Order the Defendant to pay the Plaintiff commissions currently due and owing for each account produced by the Plaintiff including, but not limited to, the commissions due and owing on the Florida Virtual School and Rockwell Automation accounts which together exceed $335,000;

   c.   Order the Defendant to account for all revenues it subsequently receives from all accounts produced by the Plaintiff for a three year period and any renewal of the accounts;

   d.   Order the Defendant to pay the Plaintiff the appropriate commission for all revenues it receives from accounts produced by the Plaintiff during the three year period and any renewal of the account;

   e.   Enter an order awarding the Plaintiff pre-judgment interest on all amounts past due.

   f.   Enter an order retaining jurisdiction of this action to enforce its orders until the

last commission payment due under the parties' agreement is paid; and

g.     Enter such other orders and such additional relief the Court deems just and proper under the circumstances, including awarding the Plaintiff his reasonable attorneys' fees and costs incurred in connection with this action pursuant to Florida Statute 448.08.

## COUNT II
### (Common Law Claim for Unpaid Compensation)

1-29.    Plaintiff incorporates paragraphs 1 through 29 of Count 1 as paragraphs 1 through 29 of this Count II.

30.    By actively soliciting clients for CCA's call center at CCA's request, the Plaintiff has conferred a substantial financial benefit on the Defendant.

31.    CCA knowingly and voluntarily accepted the Plaintiff's work on its behalf and retained the benefits received from his work.

32.    By terminating the Plaintiff's services after receiving the benefit of his work, CCA's retention of the benefit is inequitable unless CCA pays Plaintiff the agreed commissions which represent the agreed value of the benefit CCA received from the Plaintiff's work.

Wherefore, the Plaintiff requests that this Court enter judgment in his favor and against the Defendant, Contact Centers of America, LLC, and to award him the following relief:

a.     Order the Defendant to account for all gross revenues received by CCA from accounts produced by Plaintiff;

b.     Order the Defendant to pay the Plaintiff commissions currently due and owing for each account produced by the Plaintiff including, but not limited to, the commissions due and owing on the Florida Virtual School and Rockwell Automation accounts which together exceed $335,000;

c.     Order the Defendant to account for all revenues it subsequently receives from all accounts produced by the Plaintiff for a three year period and any renewal of the accounts;

d.     Order the Defendant to pay the Plaintiff the appropriate commission for all

revenues it receives from accounts produced by the Plaintiff during the three year period and any renewal of the account;

e.  Enter an order awarding the Plaintiff pre-judgment interest on all amounts past due.

f.  Enter an order retaining jurisdiction of this action to enforce its orders until the last commission payment due under the parties' agreement is paid; and

g.  Enter such other orders and such additional relief the Court deems just and proper under the circumstances, including awarding the Plaintiff his reasonable attorneys' fees and costs incurred in connection with this action pursuant to Florida Statute 448.08.

**PLAINTIFF DEMANDS A JURY ON ALL COUNTS**

                Respectfully submitted,

                James Plonsker

                By:/s/ Marshall J. Burt
                  One of his attorneys

Marshall J. Burt, Esq.
Law Offices of Marshall J. Burt
Illinois Bar No. 6198381
77 West Washington Street
Suite 1900
Chicago, IL 60602
(312) 419-1999
marshall@mjburtlaw.com

Travis R. Hollifield – Local Counsel
Florida Bar No.: 0094420
147 E. Lyman Avenue – Suite C
Winter Park, Florida 32789
Telephone: (407) 599-9590
trh@trhlaw.com

## CERTIFICATE OF SERVICE

      I, the undersigned attorney of record for the plaintiff, do hereby certify that on October 13, 2010, I electronically filed the foregoing document with the Clerk of Court using the CM/ECF system which will send notification of this filing to the attorneys of record.

                                      /s/ Marshall J. Burt